# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 11-196 |
| | ) | Judge Nora Barry Fischer |
| ERNEST THOMAS HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is a motion to suppress evidence filed by Defendant Ernest Thomas Harris ("Defendant") on February 21, 2012.[1] (Docket No. 42). Defendant seeks to suppress the 9 millimeter Luger caliber "R-P" ammunition which was obtained by Pittsburgh Police upon execution of a search warrant at a residence in the Hill District of Pittsburgh on July 31, 2010. (*Id.*). He claims that the search warrant obtained by the police is not supported by probable cause and, alternatively, that the affidavit contains material falsehoods or omissions which undermine the Magistrate Judge's finding of probable cause. (Docket Nos. 42, 69, 76). The Government opposes Defendant's motion. (Docket No. 52, 69, 77).

Pre-hearing briefs were submitted by both parties and a suppression hearing was held on April 24, 2012. (Docket Nos. 42, 52, 67). The transcript of said hearing has been produced and fully considered by the Court. (Docket No. 69). The Court also ordered the parties to submit proposed findings of fact and conclusions of law. (Docket No. 68). Defendant filed his proposed findings of fact and conclusions of law on June 19, 2012, (Docket No. 76), and the

---

[1] The Court notes that Defendant has also filed three additional pretrial motions, i.e., his: Motion for Disclosure of Rule 404(b) Evidence (Docket No. 39); Motion for Notice by the Government of Intention to Use Certain Evidence (Docket No. 40); and Motion for Discovery (Docket No. 41). The Court will issue separate orders setting forth the disposition of these motions.

Government filed its proposed findings of fact and conclusions of law on July 6, 2012, (Docket No. 77).

Upon consideration of the parties' submissions, the evidence presented during the motion hearing and for the following reasons, Defendant's motion to suppress [42] is denied.

## II. BACKGROUND

### A. Charges and Potential Penalties

Defendant was charged by Indictment with two counts of possession of a firearm and/or ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) on August 24, 2011. (Docket No. 1). Count One of the Indictment charges Defendant with unlawful possession of 9 millimeter Luger caliber "R-P" ammunition on July 31, 2010 while Count Two charges Defendant with unlawful possession of a 40 S&W caliber semiautomatic Glock pistol, bearing serial # DPC284US and 40 S&W caliber "R-P" ammunition on June 1, 2011. (*Id.*). The Indictment alleges that Defendant was previously convicted of the following crimes in the Court of Common Pleas of Allegheny County: receiving stolen property (auto), receiving stolen property (sportswear), retail theft and criminal conspiracy on September 20, 1988, at Docket CC# 198802769; delivery of cocaine, possession with intent to distribute cocaine and criminal conspiracy, on September 29, 1993, at Docket CC# 199303220; and, terroristic threats on April 8, 2010 at Docket CC#200910468. (*Id.* at ¶¶ 1, 2, 4). The Indictment further charges that Defendant was convicted of the crime of possession of a firearm by a convicted felon in the United States District Court for the Western District of Pennsylvania on February 12, 2002, at Docket No. 02-25. (*Id.* at ¶ 3).

The Court accepted Defendant's *nolo contendre* plea to Count Two of the Indictment on December 20, 2011. (Docket Nos. 31, 32). As to Count Two, the Presentence Investigation by

the Probation Office was completed with the attendant procedures required under the Local Criminal Rules. (Docket Nos. 47, 57, 60, 63). The Court then issued its Amended Tentative Findings and Rulings on April 16, 2012, addressing the parties' objections and setting forth the potential penalties as to Count Two, which include a statutory maximum sentence of ten years and an advisory guideline range of 120 months, given that the applicable advisory guideline range (135-168 months) is above the statutory maximum sentence. (Docket No. 66). However, as the Court recognized, the disposition of Count One, which remains pending, will affect the potential penalties in this case. (*Id.* at 1). Like Count Two, Defendant faces a statutory maximum sentence of ten (10) years at Count One, if convicted. (Docket No. 2). Further, the advisory guideline range will need to be recalculated based on any subsequent convictions. (Docket No. 66 at 1, 13).

B. *Findings of Fact*[2]

The credible evidence offered at the April 24, 2012 suppression hearing established the following facts. The Government introduced its Exhibit 1 into evidence without objection from the defense and said exhibit was admitted. (Docket No. 69 at 25-26). Exhibit 1 consists of an Application for Search Warrant and Authorization, a supporting Affidavit of Probable Cause, and a Receipt/Inventory of Seized Property. (Govt. Ex. 1, Docket No. 67-2).

Pittsburgh Police Officer Brian Schmitt presented an Application for Search Warrant and Authorization and supporting affidavit to the Hon. Richard D. Olasz, Jr., Magisterial District Judge, on July 31, 2010, requesting that a warrant be issued to search a residence at 8 Roberts, Street, Pittsburgh, PA 15219. (*Id.*). The warrant was issued at 5:00 p.m. on that date upon a

---

[2]  It is well-settled that at a hearing on a motion to suppress, "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. Hill*, Cr. No. 07-371, 2008 WL 2367185, *5 (W.D. Pa. 2008) (quoting *United States v. Richardson,* 501 F.Supp.2d 724, 734 (W.D.Pa. 2007) (citations omitted)).

finding of probable cause by Magistrate Judge Olasz. (*Id.*). Specifically, the warrant identified the items to be searched and seized as:

> [a]ny and all items taken from victim Thomas Boyd in a robbery that occurred on 7/30/2010, to include a white gold diamond ring with cross inlays, and a black and gray semi automatic handgun. Any letters, documents, or other items of indicia to establish ownership and /or control of the residence at 8 Roberts Street, Pgh Pa 15219.

(*Id.* at 2). The premises to be searched were described as:

> Residence located at 8 Roberts Street, Pgh Pa 15219. Located in the Hill District Area of the City of Pittsburgh. This being a red brinck [sic] row house home located in the rear of the complex. #8 is marked on the door of the building. To include curtledge [sic] of the home.

(*Id.*). The warrant also identifies "Marsha Bacon/Earnest Harris" as the "name of owner, occupant or possessor of the premises to be searched" on the application. (*Id.*). Finally, the warrant incorporates by reference an attached sworn affidavit by Officer Schmitt. (*Id.*).

The entirety of the affidavit of probable cause states that "probable cause belief is based upon the following facts and circumstances":

> Officer Schmitt has been a Police Officer almost five years with the City of Pittsburgh and was assigned to in [sic] plain clothes from May of 2007 to September 2009. During that time, Officer Schmitt's main objective has been the suppression of drug and gun violence. During this time, Officer Schmitt has been involved in hundreds of drug arrests along with over fifty controlled buys and narcotics related search warrants. Officer Schmitt has also attended drug trafficking and interdiction school sponsored by ILEE and training sponsored by the Northeast Counter Drug Training Facility, along with training sponsored by the Pittsburgh Police Academy.
>
> On 7/30/2010 at 1615 hours, Officers [sic] Spangler and Officer Thiros along with Officers Rosato and Carruba were dispatched to 2042 Centre Ave. (Big Toms Barber Shop) for a Robbery.

Once on scene Officers spoke with Thomas Boyd who stated that he was in his barber shop when known actor, Ernest Harris who at the time just received a haircut from one of his employees. Harris is also known to Officer Thiros who has had personal encounters with him in the past.

Boyd stated that Harris was telling him that he needs to pay him for security for his business. Boyd said "nahh i don't need any security" Harris became angry and kept on stating that you need to pay me for security and no one will bother you. Boyd again stated that he is fine and does not need any security.

Harris left the business then returned into the business a short while later, with a gray and black pistol pointed at Boyd then punched Boyd on the right side of the face, cocked the pistol and told him to give him his money and the silver ring on his finger. Harris also said "You should have paid me for security"

Harris took $205 Dollars US Currency (20's and 5) and a Silver Diamond Ring with Cross Inlays valued at approximately $2500-3000.

Harris left the bushiness and jumped into a red SUV parked on Erin Street and made right hand turn onto Centre Ave and continued west towards town.

Officers know Harris to reside at 8 Roberts Street, Pittsburgh, PA 15219.

Unit 3210 Officers O'Malley, Zigarella, along with unit 3226 and Szuch went to 8 Roberts Street to do a knock and talk. At 8 Roberts Street, Officers spoke to Harris' aunt, Marsha Bacon and confirmed that Harris does live at this address.

Officer Spangler obtained an arrest warrant for Harris for the above facts of the case. On 7/30/10 at approximately 2327 hours, Zone 2 Officers Izaj and Haniotakis arrested Harris on the warrant standing on Roberts Street approximately one block from his residence of #8 Roberts Street.

I am also familiar with Harris from prior encounters. I also know that Harris has pleaded guilty to CS13A30 at OTN: C827658-6, which makes him a person not to possess or own a firearm under CC6105.

Based on the above information, I respectfully request a search warrant for the residence of #8 Roberts Street, Pittsburgh, PA 15219 to recover the victim, Thomas Boyd's silver diamond ring with cross Inlays and possibly locate the silver and black semi-automatic handgun that Harris used in the commission of the robbery.

All of the above information has taken place in the past 24 hours.

(*Id.* at 2-3).

The warrant was executed on July 31, 2010. (*Id.* at 4). The Receipt/Inventory of Seized Property provides that the warrant was personally served on Marsha Bacon. (*Id.*). This Report lists six "items" which were seized as a result of the search, including: (1) a bag of suspected cocaine; (2) a digital scale; (3) silver spoons & syringe; (4) indicia; (5) a bag of ammo; and (6) several wallets. (*Id.*). The "bag of ammo" which was recovered from 8 Roberts Street pursuant to the search warrant contained the 9 millimeter Luger caliber "R-P" ammunition for which Defendant is charged at Count One. (Docket No. 1).

The defense offered the testimony of Ms. Dorothy Littlejohn at the motion hearing in order to attempt to establish that an illegal search of 8 Roberts Street was conducted by Pittsburgh Police a few days prior to the robbery. (Docket No. 69 at 12-19, 38). The Court found Littlejohn's testimony to be generally credible with respect to basic points concerning her relationship with the Defendant, their extensive drug use together, and their use of 8 Roberts Street as a place to consume drugs. However, the Court did not find credible her contention that a search of 8 Roberts Street was conducted by Pittsburgh Police Officers a few days prior to the robbery wherein the officers allegedly swept the house for drugs and guns but did not seize any evidence.

As to their relationship, Littlejohn testified that she and Defendant were "together" since 2008 but not married and acknowledged that they have a six month old daughter.[3] (Docket No. 69 at 50). She explained that Defendant's financial support was her sole source of income. (*Id.* at 49-51, 53). He was also her main supplier of drugs. (*Id.*). Her own drug habits were extensive. (*Id.* at 46-52). She testified that she used marijuana, crack cocaine, heroin, and ecstacy as often as she could. (*Id.* at 48-49). She affirmed that she and Defendant used these illegal drugs multiple times a day. (*Id.*). Littlejohn also acknowledged that she was aware of Defendant's criminal record, including his prior convictions for drug and firearms offenses. (*Id.* at 58).

With respect to the house at 8 Roberts Street, Littlejohn explained that it was leased to Marsha Bacon, who is Defendant's aunt. (*Id.* at 40, 51). She described this location as a crack house, where drug addicts including her and the Defendant would convene to use drugs. (*Id.* at 51-52). In exchange, drug users would provide Bacon with drugs for her own use. (*Id.*). Littlejohn and Defendant stayed at the residence often, with permission of Bacon and used the residence for all-night drug binges. (*Id.* at 52). Although they maintained a separate residence, they would often "crash" at 8 Roberts Street for days at a time when they wanted to get high. (*Id.* at 62). In fact, they were at this address so often they left many of their belongings behind. (*Id.* at 51, 62). The belongings that were left behind included: electronic equipment such as a cable TV converter box and CD; a dress; pairs of shorts; and a pair of shoes. (*Id.* at 62). The presence of these items at the house, coupled with Littlejohn's testimony that they stayed at 8 Roberts Street "whenever" they wanted to, demonstrates to the Court that the couple effectively maintained two residences, one of which included 8 Roberts Street. (*Id.*).

---

[3] The Court notes that Littlejohn held the couple's daughter on her lap while testifying. (Docket No. 69 at 38). Despite heated argument from the attorneys at times, she managed to sleep throughout the proceeding.

Defendant also attempted to elicit testimony from Littlejohn concerning the alleged "illegal search" of 8 Roberts Street which he contends occurred a few days prior to the robbery at Big Toms Barber Shop on July 30, 2010. Littlejohn was unsure as to the precise date of the events to which she testified. (*Id.* at 40). In any event, Littlejohn explained that they were up all night doing drugs at 8 Roberts Street and in the morning, around eight or nine a.m., became involved in a heated argument. (*Id.* at 59-60). She stated that they were having an argument about "typical boyfriend-girlfriend stuff," but did not further elaborate about the nature of their dispute. (*Id.* at 59). Littlejohn told the Court that they were yelling loudly at each other inside the home and that police knocked on the door. (*Id.* at 41). She stated that she did not call the police but speculated that a neighbor who overheard them must have. (*Id.* at 44). Three or four officers arrived at the front door. (*Id.* at 41, 60). She said that they opened the door for the officers, who then immediately grabbed Defendant, pulled him outside on the front porch and handcuffed him. (*Id.* at 41-42, 60).

The officers apparently questioned her regarding their argument and asked where the drugs and guns were located in the house. (*Id.* at 42). Littlejohn testified that the police officers then went inside the home for about 20 minutes to search around. (*Id.* at 42-44). They did not seize any evidence at that time. (*Id.* at 45, 54-56). Indeed, Littlejohn explained that there was no contraband in the house because whatever drugs were previously in the apartment, they had used and any drug paraphernalia was disposed of by flushing it down the toilet.[4] (*Id.*).

Defendant argues in his proposed findings of fact, (*see* Docket No. 76 at 2), that information provided by the Government pursuant to a discovery request for any law

---

[4] The Court does not find credible Littlejohn's statements that, after being up all night on a drug binge, and apparently in the middle of a loud argument with Defendant, that they had the wherewithal to hide or dispose of all of the drugs and drug paraphernalia in the house before the police showed up, unannounced, at the doorstep of the residence. It is not plausible that they would have been able hide the contraband given that they had no opportunity to do so before the police arrived.

enforcement documentation of the alleged "illegal search" corroborates Littlejohn's testimony concerning the police's activities on that date. However, Defendant did not supply the discovery information to the Court to which he alludes. (*See* Docket No. 76). In response, the Government submitted documentation which states that the U.S. Attorney's Office contacted 911, the Zone 2 police station in the Hill District section of Pittsburgh, and the Pittsburgh Police Records Room, but found no call logs, police reports or police logs of any complaints of activity at 8 Roberts Street or involving Littlejohn or the Defendant between 6/25/10 and 7/2/10. (Docket No. 77-1). Said letter only reports that 911 recorded a single civilian call made to request medical attention for a 73 year old individual at 8 Roberts Street on June 29, 2010. (*Id.*). A fire engine and medic were called to the scene but no police were dispatched. (*Id.*). Thus, there are no records of any police search at 8 Roberts Street in the days before and after the robbery on June 30, 2010, undermining Littlejohn's testimony on these points.

### III. DISCUSSION

At the outset, the Court notes that the Government initially challenged Defendant's standing to bring his suppression motion because Defendant argued that 8 Roberts Street was not his residence. (Docket No. 52). However, at the hearing, the Government and Defendant agreed that "the location which was the subject of the search was a residence utilized by the defendant and that, as such, the defendant has standing to challenge the validity of the search." (Docket No. 77 at ¶ 3). Given the parties' agreement, the Court need not separately analyze whether Defendant has met his burden to establish that he had a reasonable expectation of privacy in the residence at 8 Roberts Street to challenge the warrant and subsequent search of the premises.[5]

---

[5]      The Court notes that our Court of Appeals has held that:

> [t]he protections of the Fourth Amendment extend not only to people in "their" houses, but also "in some circumstances ... in the house of someone else."

*See United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010) (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980)) ("Because Fourth Amendment rights are 'personal,' the proponent of a motion to suppress 'bears the burden of proving ... that he had a legitimate expectation of privacy in' the place searched."). Therefore, as standing has been established by virtue of the Government's concession, the Court turns to Defendant's challenge that his Fourth Amendment rights were violated by the warrant and search.

In his motion to suppress, Defendant argues generally that the affidavit does not establish probable cause to search 8 Roberts Street. (Docket No. 42). He also alleges that the affidavit and application: "lack specificity regarding the exact location or locations to be searched"; do "not demonstrate a fair probability that evidence of the crime at issue would be found in the place identified to be searched, in that the affidavit lacks evidence of a nexus between the criminal activity at issue and the place to be searched"; and contain "materially false information or omissions that defeat any finding of probable cause." (*Id.* at ¶ 4(a)-(d)). The Government responds that the affidavit and application clearly demonstrate probable cause to search the

_____

[*Minnesota v. Carter*, 525 U.S. 83, 89, 119 S.Ct. 469 (citation omitted)]. In *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the Supreme Court held that an overnight guest in the house of another has a legitimate expectation of privacy for as long as they are in the home. The Court reasoned that "[s]taying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society ... [and] [f]rom the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy...." *Id.* at 98–99, 110 S.Ct. 1684. An overnight guest satisfies the two-part inquiry announced in *Ciraolo*, but fails when the overnight guest departs the home, or where "one [ ] is merely present with the consent of the householder...." *Carter*, 525 U.S. at 90, 119 S.Ct. 469. Accordingly, "[i]t is settled law that ... [s]hort-term guests ... have no expectation of privacy in the house...." *United States v. Mosley*, 454 F.3d 249, 259 (3d Cir. 2006).

*United States v. Pettiway*, 429 F. App'x 132, 135 (3d Cir. 2011) *cert. denied*, 132 S. Ct. 350, 181 L. Ed. 2d 220 (2011). Given this precedent, it would appear that if Defendant is only categorized as an "overnight guest," rather than as a resident at the home, he would not have standing to challenge the search in this case because he was not present at the home when the search was conducted. (Indeed, he had been arrested by police at a late hour the night before the search was executed and was presumably still detained at the time of the search). In any event, as the Government concedes that standing has been established, the Court need not fully analyze this issue. (*See* Docket No. 77 at ¶ 3).

residence in that the information as to the location of the search is sufficiently specific and the nexus between the alleged crime and the residence can be easily inferred from the facts set forth in the affidavit. (Docket No. 52). Alternatively, the Government contends that the good faith exception should apply because the police officers relied on the warrant and conducted the search in good faith. (*Id.*). Finally, the Government argues that the evidence which was presented at the motion hearing in this matter did not establish any material falsehoods or omissions sufficient to warrant a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) or to undermine the finding of probable cause by the magistrate judge. (Docket No. 77).

Given the overlapping nature of many of the parties' arguments and the legal analysis required to resolve these disputes, the Court will first address the probable cause issues; then discuss the related arguments as to the good faith exception to the warrant requirement and finally turn to alleged material falsehoods or omissions in the challenged affidavit.

*A. Probable Cause Determination*

Defendant contends that the evidence seized at 8 Roberts Street was obtained in violation of his Fourth Amendment rights, which provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND. IV. In this case, a warrant was secured by Pittsburgh Police from Magistrate Judge Olasz, who found that the application and supporting affidavit established probable cause to search 8 Roberts Street in order to locate the items Defendant allegedly stole during the June 30, 2010 robbery and the firearm he used in commission of that crime. (Govt. Ex. 1). "A magistrate's 'determination of probable cause should be paid great deference by

reviewing courts.'" *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). A trial court exercises "only a deferential review of the *initial* probable cause determination made by the magistrate." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) (citing *Gates*, 462 U.S. at 236) (emphasis in *Conley*). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for … conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). The deference given to a magistrate's issuance of a warrant "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011). Still, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993).

Given that a magistrate's role in issuing a warrant is to determine whether there "is a fair probability that contraband or evidence of a crime will be found in a particular place," *Gates*, 462 U.S. at 238, a warrant is to be upheld on review "as long as there is a substantial basis for a fair probability that evidence will be found," *Conley*, 4 F.3d at 1205. In conducting this assessment, a reviewing court is confined "to the facts that were before the magistrate judge, i.e., the affidavit, and [the court may] not consider information from other portions of the record."[6] *Jones*, 994 F.3d at 1055. "The supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner." *Miknevich*, 638 F.3d at 182. Further, "probable cause is a fluid concept that turns on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules." *Miknevich*, 638 F.3d at 182

---

[6]     The Court notes that the affidavit in this case is expressly incorporated by reference in the warrant. (*See* Govt. Ex. 1). Thus, the issues which supported the ultimate suppression of evidence in *United States v. Wecht*, 619 F.Supp.2d 213 (W.D.Pa. May 14, 2009) are not present here as the incorporated affidavit may be fully considered by the Court. Defendant does not argue otherwise.

(quoting *United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006)) (internal quotations omitted). Proof beyond a reasonable doubt is not required. *Miknevich*, 638 F.3d at 182.

The Court first finds that the Defendant's challenge to the specificity of the place to be searched in the affidavit and warrant, i.e., 8 Roberts Street, is without merit. In his initial motion to suppress, Defendant argues only that "[t]he affidavit and application lack specificity regarding the exact location or locations to be searched." (Docket No. 42 at ¶ 4(c)). However, this argument is wholly unsupported by any substantive argument from Defendant as defense counsel did not provide any further argument during the motion hearing (*see* Docket No. 69 at 27-28), and failed to address it in his proposed findings of fact and conclusions of law, (*see* Docket No. 76). In any event, the Court finds that the description of 8 Roberts Street set forth in the warrant is sufficiently particular under prevailing precedent. *See Maryland v. Garrison*, 480 U.S. 79, 91 (1987) (the "particularity-of-description" requirement is satisfied when "the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended."). With respect to the location to be searched, the warrant states that:

> Residence located at 8 Roberts Street, Pgh Pa 15219. Located in the Hill District Area of the City of Pittsburgh. This being a red brinck [sic] row house home located in the rear of the complex. #8 is market on the door of the building. To include curtledge [sic] of the home.

(Govt. Ex. 1). As is evident from this passage, the warrant includes the street address of the residence, identifies the neighborhood within the City of Pittsburgh where it is located and contains a brief description of the home, a collection of information from which anyone asserting reasonable effort could identify the residence. *See Garrison*, 480 U.S. at 91; *see also United States v. Leveto*, 343 F. Supp. 2d 434, 443-46 (W.D. Pa. 2004). Therefore, Defendant's motion

to suppress is denied to the extent that he argues that the warrant does not sufficiently particularize the place to be searched.

The Court likewise concludes that the affidavit and application set forth sufficient information from which a nexus between the criminal activity and the place to be searched can be established. The United States Court of Appeals for the Third Circuit has recognized that in order to establish probable cause a warrant and affidavit must set forth a sufficient nexus between the criminal activity and the place for which a search warrant is sought. *See*, *e.g.*, *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001); *Jones*, 994 F.2d at 1055. However, "direct evidence linking the place to be searched to the crime is not required for the issuance of a search warrant." *Hodge*, 246 F.3d at 305 (quoting *Conley*, 4 F.3d at 1207). "Instead, probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where the criminal might hide the fruits of his crime." *Hodge*, 246 F.3d at 305 (quoting *Jones*, 994 F.2d at 1051). A court may "draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Hodge*, 246 F.3d at 305-306 (quoting *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000)). The fact that a defendant was arrested may increase the likelihood of probable cause to search his home. *See Jones*, 994 F.2d at 1055-56 (while "probable cause to arrest does not automatically provide probable cause to search the arrestee's home," probable cause to arrest increases "the likelihood that [the arrestee's] residence contains evidence of the crime.").

Here, there is admittedly no direct evidence set forth in the warrant or affidavit linking the residence at 8 Roberts Street to the fruits of the alleged robbery at Big Toms Barber Shop nor the firearm he purportedly used to commission the robbery. (*See* Govt. Ex. 1). Critically,

though, such direct evidence is not required. As is discussed below, considering the totality of the circumstances, "there [wa]s a fair probability that contraband or evidence of a crime w[ould] be found" at 8 Roberts Street. *Gates*, 462 U.S. at 238.

The Court finds that there are several reasonable inferences from the facts which establish a nexus between the evidence from the robbery and the location of the search in this case. First, the affidavit provides that the officers confirmed with Defendant's aunt, Marsha Bacon, that he lived at 8 Roberts Street after conducting a "knock and talk" with her at the residence. (Govt. Ex. 1). Second, the contraband from the robbery – the firearm, cash and a ring – are of a size that could readily be hidden almost anywhere, are among the types of items that criminals would likely hide in their residences and these items remained unaccounted for after Defendant was arrested on June 30, 2010. *See Jones*, 994 F.2d at 1056 (holding that "cash is the type of loot that criminals seek to hide in secure places like their homes" and items such as firearms are "the types of evidence likely to be kept in a suspect's residence."). Third, the location of the robbery, at 2042 Centre Avenue and the location of the search at 8 Roberts Street, were a few blocks apart in the Hill District section of Pittsburgh, suggesting that the contraband could have easily been transported from one location to the other in an effort to hide it there. *See Jones*, 994 F.2d at 1057 (noting that the nearness of the locations of the crime scene and residence made it likely that the residence would become a "repository for evidence"). Fourth, the timeline of events set forth in the affidavit establishes that Defendant had more than a reasonable opportunity between the robbery at 1615 hours (4:15 p.m. EST) and his arrest on Roberts Street at 2327 hours (11:27 p.m. EST) to return to the residence at 8 Roberts Street and stash the contraband. *Id.* (noting that the passage of two weeks between the crime and the

search was not so long to discount that contraband would still be located in the defendant's residence).

Despite Defendant's suggestion that there is no evidence that he returned to the Roberts Street residence during this 7 hour window of time, it is reasonable to infer from the facts set forth in the affidavit that Defendant returned to this abode after the robbery. To this end, the affidavit states that officers "arrested Harris on the warrant standing on Roberts Street approximately one block from his residence of #8 Roberts Street," establishing that he was very near it at that time. (Govt. Ex. 1 at 2). Moreover, the affidavit also provides that after committing the robbery, Defendant fled the scene in a red SUV driving west on Centre Avenue toward "town," or downtown Pittsburgh. (*Id.*). It is also reasonable to infer that the magistrate judge[7] would understand that by driving west on Centre Avenue from the barber shop, Defendant was also driving in the general direction of the Roberts Street residence.

For all of these reasons, Defendant's motion to suppress is denied to the extent that he argues that the affidavit and application do not establish sufficient nexus between the alleged contraband and the location of the search.

Having now rejected the Defendant's specific challenges to the warrant and affidavit, the Court finds that Defendant's general challenge to a lack of probable cause must likewise be

---

[7] The Court notes that the warrant states that Magistrate Judge Olasz's office is in West Mifflin, Pennsylvania and that his commission expires in January of 2014. (Govt. Ex. 1). In Pennsylvania, magisterial district judges serve six year terms. 42 Pa.C.S. § 3152(a)(4). Thus, based on the information in the warrant and affidavit, Magistrate Judge Olasz's tenure likely commenced in January of 2008. As such, he had already served in this role for more than 2 years prior to authorizing the search in this case on June 31, 2010. (Govt. Ex. 1). Although his office is outside the Hill District, the Court presumes that Magistrate Judge Olasz had knowledge of the general area of the Hill District given his experience and also that he likely understood that the locations of the robbery and the search were very close based on the totality of the facts set forth in the affidavit. Moreover, it is well-settled that courts (including a detached, neutral magistrate judge) may take judicial notice of the map of a general area and consider the location of events in rendering a decision. *See United States v. Perea-Rey*, 680 F.3d 1179, 1182, n.1 (9th Cir. 2012); *see also* FED.R.EVID. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). A review of a map of the City's Hill District neighborhood clearly discloses that 8 Roberts Street is due west of Big Toms Barber Shop on 2042 Centre Avenue and that these two locations are approximately .5 miles apart.

overruled. Considering the totality of the circumstances, and for the reasons described above, the Court finds that the magistrate judge had a "substantial basis for a fair probability" that the contraband listed in the warrant and affidavit would be found at 8 Roberts Street. *See Conley*, 4 F.3d at 1205. Thus, the warrant was supported by probable cause. Accordingly, Defendant's motion to suppress is denied to the extent that he contests the magistrate judge's probable cause determination.

## B. *Good Faith Exception/Franks Hearing*

The Court further holds that the good faith exception would apply if the warrant was not supported by probable cause and also that Defendant has failed to meet his burden to demonstrate that the warrant and affidavit contained material falsehoods or omitted material information such that the Court will not convene a hearing under *Franks* to permit a further challenge to the warrant and affidavit. The Court will briefly explain its reasoning for these decisions, in turn.

The Supreme Court has held that evidence derived from a warrant not supported by probable cause is still admissible when obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate judge. *United States v. Leon*, 468 U.S. 897, 926 (1984). "[T]he purpose of the exclusionary rule—to deter police misconduct— would not be furthered by suppressing evidence obtained during a search 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.'" *United States v. Tracey*, 597 F.3d 140, 150 (3d Cir. 2010) (quoting *Leon*, 468 U.S. at 919–20). The question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922. Indeed, "[t]he mere existence of a warrant typically suffices to prove that an officer conducted a search in good

faith and justifies application of the good faith exception." *Hodge*, 246 F.3d at 307-308 (citing *Leon*, 468 U.S. at 922). The United States Court of Appeals for the Third Circuit has recognized that the good faith exception does not apply in four limited circumstances:

> 1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> 2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
>
> 3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> 4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Tracey*, 597 F.3d at 151 (citations omitted). These limited exceptions "involve conduct that is 'deliberate, reckless, or grossly negligent." *Id.* (quoting *Herring v. United States*, 55 U.S. 135, 129 S.Ct. 695, 700-02 (2009)).

Defendant argues that the first and third factors undermine the validity of the warrant in this case. His challenge to the third factor which requires a finding that "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" is easily disposed of. *See Tracey*, 597 F.3d at 151. The Court has already determined that the warrant is supported by probable cause in the preceding section of this Opinion. For the same reasons, the Court rejects Defendant's argument that the good faith exception should not apply based on an alleged lack of probable cause supporting the warrant.

Defendant's challenge to the first factor requires further discussion. "[A] criminal defendant has the right to challenge the truthfulness of factual statements made in the affidavit of probable cause supporting a warrant subsequent to the ex parte issuance of the warrant." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (citing *Franks*, 438 U.S. 154 (1978)). In

*Franks*, "the Court created a mechanism to allow a defendant to overcome the general presumption that an affidavit of probable cause supporting a search warrant is valid." *Id.* The Court of Appeals has recognized that the first step under *Franks* requires the defendant to "make a 'substantial preliminary showing' that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause." *Id.* (citing *Franks*, 438 U.S. at 171). Further,

> [i]n order to make this preliminary showing, the defendant cannot rest on mere conclusory allegations or a "mere desire to cross-examine," but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses.

*Id.* at 383, n.8 (quoting *Franks*, 438 U.S. at 171). If the Defendant makes his preliminary showing, the Court has the discretion to hold a *Franks* hearing and permit a further challenge to the affidavit.

> At the hearing, the defendant must ultimately prove by a preponderance of the evidence that: (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination.
>
> …
>
> In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, [ … ]: (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.
>
> …
>
> In the end, the defendant must prove by a preponderance of the evidence that probable cause does not exist under the corrected affidavit, i.e., that the deficiency in the affidavit was material to the

original probable cause finding. [The Court of Appeals has] recognized a distinction between misrepresentations and omissions for purposes of determining whether deficiencies in the affidavit are "material." When faced with an affirmative misrepresentation, the court is required to excise the false statement from the affidavit. In contrast, when faced with an omission, the court must remove the "falsehood created by an omission by supplying the omitted information to the original affidavit."

*Yusuf*, 461 F.3d at 383-84 (internal citations omitted).

In his motion to suppress, Defendant argued only that "[t]he affidavit contains materially false information or omissions that defeat any finding of probable cause," with a citation to *Franks v. Delaware*, 438 U.S. 154, 156 (1978) but provided no argument or evidence in support of this assertion. As such, Defendant did not meet his burden under *Franks* and *Yusuf* to make a "substantial preliminary showing" that the affidavit contained any deliberate falsehoods or omissions prior to the motion hearing. *See Yusuf*, 461 F.3d at 383. The Government argued that the Defendant failed to meet his burden at the hearing. (Docket No. 69 at 35). However, Government counsel acknowledged that Defendant's witness was present and consented to permitting the Defendant to put on evidence in an effort to meet his initial burden. (*Id*. at 35-36). Thus, with consent of the Government and for convenience of the witness, the Court heard testimony from Defendant's paramour Dorothy Littlejohn at the hearing.

Based on this testimony, Defendant now argues that "the affidavit contains statements or omissions that were deliberately false or demonstrated a reckless disregard for the truth, in that the affidavit identifies 8 Roberts Street as Defendant's 'residence' when it, in fact, was a 'crack house' … and in that it omitted information regarding the prior illegal search that was conducted" a few days prior to the robbery.[8] (Docket No. 76 at ¶ 14). The Government

---

[8] As the Government points out in its proposed findings of fact and conclusions of law, although this issue was raised at oral argument, (Docket No. 69 at 24), Defendant did not argue in his proposed findings of fact and conclusions of law that the warrant is unsupported based on an alleged omission by the police that they were aware

contends that Littlejohn's testimony does not support either of Defendant's positions. (Docket No. 77). And it maintains that the facts which were established by the defense at the hearing were not material to the magistrate judge's probable cause determination. (*Id.*). The Court agrees with the Government that Defendant did not establish any material facts through Littlejohn's testimony which would undermine the probable cause determination.

With respect to the supposed illegal search by police officers a few days prior to June 30, 2010, Defendant argued at the hearing that the police searched the house and observed contraband throughout but did not confiscate it at that time. (Docket No. 69 at 13-14). His counsel maintained that this information would be material to the magistrate judge's probable cause determination, if proven, because it would tend to show that the true reason for the police to secure the warrant was to obtain the contraband which they knew was in the residence. (*Id.*). The Court agrees that such facts would possibly be material to the magistrate judge's findings but Littlejohn's testimony does not provide *any* factual support for this argument. As the Court recognizes above, Littlejohn's testimony was not entirely credible with respect to the supposed search. Indeed, the Government has been unable to locate any records which demonstrate that police were called to the residence at 8 Roberts Street during the relevant time frame, undermining her testimony that there was a considerable police presence at the site. (Docket No. 77-1). Moreover, she testified that she was up all night using drugs with the Defendant which then resulted in their early-morning altercation. Hence, it would appear to the Court that her memory, if any, would obviously be impaired after an all-night drug binge. But, even if the Court credited Littlejohn's testimony and concluded that the search did occur and the police

---

that the Defendant did not return to 8 Roberts Street after he committed the robbery but before he was arrested. The Court agrees with the Government that such a fact would likely be considered material to the magistrate judge's determination of probable cause. *See Yusuf*, 461 F.3d at 383. However, Littlejohn offered no testimony which would support this fact as she was never asked whether she was in the house on June 30, 2010 or if she saw Defendant there or elsewhere between the robbery and his arrest. (*See generally* Docket No. 69 at 38-64).

conducted a sweep of the residence for drugs and guns after responding to the altercation between her and Defendant, Littlejohn testified that there was *no* contraband in the house at that time. (Docket No. 69 at 54-56). Thus, her testimony does not support Defendant's argument that the police entered the residence and observed certain contraband only to later intentionally exclude it from the affidavit. The fact that police were in the house and saw no contraband a few days prior to the robbery is simply not material to the determination of whether the neutral magistrate judge believed that there was probable cause to search the residence to locate the items which were stolen a few days later. *See Yusuf*, 461 F.3d at 383 (omitted facts are not material if they would not change the probable cause determination if added to the affidavit).

Defendant also makes much of whether 8 Roberts Street was his "residence" as is set forth in the affidavit and warrant. (Docket No. 76). He claims that the magistrate judge would have found material that the home was used as a "crack house" and that Defendant resided elsewhere on occasion. (*Id.*). The Court again finds that this argument is not material to the probable cause determination. *See Yusuf*, 461 F.3d at 383. Littlejohn indeed testified that the home was a crack house leased by Marsha Bacon but also acknowledged that she and Defendant spent considerable time there and would crash for long periods of time to use drugs. Moreover, her testimony did not undermine the police officer's assertion in the affidavit that the officers were told by the leaseholder, Defendant's aunt, that Defendant lived at 8 Roberts Street. (Govt. Ex. 1 at 2-3). Thus, the Court finds that Littlejohn's testimony as to their use of 8 Roberts Street, if added to the affidavit, would not be material to the probable cause determination. *See Yusuf*, 461 F.3d at 383.

The Court also notes that Defendant's argument that 8 Roberts Street is not his residence runs counter to the parties' agreement at the motion hearing that 8 Roberts Street was a residence

he utilized sufficient to establish standing to challenge the warrant under the Fourth Amendment. Indeed, if 8 Roberts Street is truly not Defendant's "residence" but instead merely a "crack house" where he would spend the night on occasion, Defendant would have no reasonable expectation of privacy in the home and lacks standing to bring a motion to suppress the evidence which was seized there at a time when he was not present. *See Pettiway*, 429 F. App'x at 135. So, even if Defendant had successfully convinced the Court that the statement in the affidavit that 8 Roberts Street was his residence is materially false, the Court's disposition of the present motion would be the same and his motion to suppress would be denied for a lack of standing.

For these reasons, Defendant has failed to meet his burden to demonstrate that the affidavit contained false statements or omitted information which was material to the magistrate judge's probable cause determination. As such, Defendant has not established that he is entitled to a hearing under *Franks* or presented credible evidence that would undermine the presumptive validity of the warrant. Therefore, the good faith exception to the warrant requirement applies here and provides an alternative basis to deny the motion to suppress.

IV. CONCLUSION

Based on the foregoing, Defendant's motion to suppress [42] is DENIED. An appropriate Order follows.


*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:   August 6, 2012

cc/ecf:  All counsel of record.